UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **JAMES COLEMAN**<br>    **LA DOC #214322**<br>**VS.**<br><br>**LINCOLN PARISH DETENTION**<br>**CENTER, ET AL.** | **CIVIL ACTION NO. 3:15-cv-0401**<br><br>**SECTION P**<br><br>**JUDGE DONALD E. WALTER**<br><br>**MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff James Coleman, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on February 17, 2015. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections. He is incarcerated at the Jackson Parish Correctional Center (JPCC) but complains that his Constitutional rights were violated by officials at the Lincoln Parish Detention Center (LPDC).  He sued LPDC, its warden, Jim Tuten, Dy. R. Johnson, and Nurse Anna Rawson. He prayed for injunctive relief (transfer back to LPDC and thereafter to David Wade Corrections Center) and compensatory and punitive damages. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

*Statement of the Case*

Plaintiff commenced this litigation on February 17, 2015, by filing a hand-written letter addressed to the Court. Therein he complained that inmate grievances were being ignored and that outgoing and incoming "legal mail" was being interfered with by unnamed corrections

officials at the LPDC. [Doc. 1] Plaintiff was ordered to submit his complaint using the form provided to prisoners in this district. [Doc. 3] On April 10, 2015, he submitted another hand-written letter addressed to the Court. Therein he complained that he was confined to an isolation cell by Nurse Anna Rawson in retaliation for filing his original complaint. He also implied that Nurse Rawson believed that he was malingering and confined him to the cell to prevent plaintiff from intentionally injuring himself. [Doc. 4]

In a letter dated May 21 and received and filed on May 26, 2015, plaintiff advised of his transfer from LPDC to JPCC. [Doc. 7]

On June 2, 2015, plaintiff's complaint was dismissed because he failed to submit his complaint on the proper form and because he failed to either submit the filing fee or a properly executed application to proceed *in forma pauperis*. [Doc. 9] On June 3, 2015, plaintiff's complaint was reinstated and the proper forms were again sent to him with instructions. [Doc. 10]

On June 16, 2015, he submitted his complaint [Doc. 11; Doc. 12] and application to proceed *in forma pauperis* [Doc. 13] using the proper forms. In these complaints plaintiff alleged that during the period of time that he was incarcerated at the LPDC, he was "in the pre-trial population" and a practicing Muslim who was "denied the right to attend the congregational prayer service of 'Jummah.'" He complained that he and his fellow Muslims imprisoned at LPDC were denied the right to participate in the weekly Jummah services. He further complained that when he filed his grievance on this issue, he was transferred to his present place of confinement.

He also complained that he filed a grievance on April 18, 2015, in which he complained

2

that "transporting officers" misappropriated his "legal mail" on April 7, 2015, and thus interfered with his ability to prosecute another civil action filed in this court and assigned Civil Action No. 3:15-cv-0263.[1]

He also claimed that on some unspecified date he complained to Nurse Rawson that he was experiencing "jerking motions and severe pains running down my leg and my back." According to plaintiff, Rawson advised that she would need to send for plaintiff's medical record; however, according to plaintiff, she did not respond to plaintiff's complaint or schedule an appointment for an examination by a physician.

On April 7, 2015, plaintiff filed a grievance which complained that he was injured when he fell out of a prison transport van. According to plaintiff this fall was occasioned by the negligence of the transport officer, Officer Smith. Plaintiff was apparently taken to a nearby hospital where he was examined and treated by a physician; however, upon his return to LPDC he was placed in an isolation cell. Plaintiff complained that he was the object of ridicule resulting in mental anguish. In that pleading plaintiff requested that he be transferred back to LPDC until his grievance was resolved and thereafter transferred to the David Wade Corrections

---

[1] See *James Coleman v. James M. LeBlanc, et al.*, Civil Action No. 3:15-cv-0263. Plaintiff filed the complaint in this Court on February 6, 2015. He sued James M. LeBlanc, the Secretary of Louisiana's Department of Corrections, Sheryl Ranatza, Chairman of the Louisiana Parole Board, and Orlando Beene, plaintiff's parole officer, claiming breach of contract with regard to the computation of "good time" credits and requesting a re-computation of "good time" credits, his release from parole, and payment of incentive wages as per the contract. See Civil Action 3:15-0263 at Doc. 1. Plaintiff was ordered to submit his complaint on the form provided to prisoners in this District, but he failed to timely comply with that order. On June 16, 2015, he filed a motion seeking permission to "re-file" his complaint "in the Parish of East Baton Rouge." [Id., Doc. 13] On July 6, 2015, the complaint was stricken and dismissed for failing to comply with the amend order. In so doing, the undersigned concluded that plaintiff's motion [Doc. 13] should be construed as a motion for voluntary dismissal so as to allow plaintiff the opportunity to re-file his complaint in the forum of his choice. [Doc. 14]

Center (DWCC). He also prayed for compensatory damages, punitive damages, and "damages ... for any and all acts of negligence."

In a supplemental pleading filed with that complaint he again alleged that his transfer was in retaliation for having filed prison grievances. According to the pleading, "plaintiff suffered mental anguish as a result of the denial of medical, the misappropriation of legal mail, the refusal to answer grievances, and the retaliatory transfer." He added Nurse Rawson as a defendant and reasserted his demand to be transferred back to LPDC and thereafter to DWCC. [Doc. 12] Plaintiff also submitted the copy of an "Offender Request Form" dated May 14, 2015. Plaintiff entitled the form "Grievances that have not been answered." The form lists grievances dated April 7 and 18, 2015 (to Nurse Rawson and Sheriff Stone) and May 5 and 14, 2015 (to Transport Officers and Deputy Johnson.) In that document plaintiff addressed Dy. Tabor and wrote, "I am inquiring about all the above grievances that I have not received a written response." [Doc. 12-1, p. 2] Plaintiff also included a letter addressed to him from Major Tuten on May 21, 2015. The letter's subject line referenced plaintiff's civil action, *Coleman v. LeBlanc, et* al., Civil Action No. 3:15-cv-0263. Therein Tuten wrote

> We have confirmed that your original mailing was received by the court ant that the reply was generated by the court in response. We have no record of your sending the appropriate forms as requested by the court and the officers you identify in your grievance deny removing any of your mail from the system. We note that the court did receive your motion to reconsider the dismissal of your complaint and has given you another deadline to file your complaint on the proper forms and either pay the required fee or submit the proper form to proceed as a pauper. A copy of that order is being provided with this response. The Court's Notice gave you direction as to how to remedy the defects noted by the court. Copies of the appropriate forms were provided to you by the court. If you need additional copies, they will be provided to you upon request. Otherwise, your grievance is denied because your legal mail was delivered as presented to us and we have determined that your complaint that your legal mail was

4

'misappropriated' by the Sheriff's Office is unfounded. [Doc. 12-1, p. 1]

On June 18, 2015, plaintiff's application to proceed *in forma pauperis* was granted. [Doc. 15] On September 18, 2015, plaintiff was directed to amend his complaint to provide additional information in support of his claims, namely, "Plaintiff ... should amend his complaint to provide with respect to EACH claim – (1) the name of <u>each person</u> who allegedly violated plaintiff's constitutional rights; (2) a description of what actually occurred or <u>what each defendant did to violate plaintiff's rights</u>;(3) <u>the place and date that each event occurred</u>; and (4) a description of the <u>alleged injury</u> sustained as a result of the alleged violation." In addition plaintiff was directed to "... state the number of Muslims who were incarcerated at LPDC and, whether he was prevented from engaging in private prayer." Finally, plaintiff was specifically ordered to "... demonstrate the harm, injury, or prejudice experienced as a result of each alleged violation of his rights." [Doc. 16]

On October 6, 2015, plaintiff requested appointment of counsel. [Doc. 17] On October 26, 2015, his motion was denied. [Doc. 19] Meanwhile, on October 6, 2015, plaintiff amended his complaint in compliance with the September 18 order. [Doc. 18] In this amended complaint plaintiff specified the following claims:

### *Practice of Religion*

1. The defendants (specifically Warden Tuten) "denied plaintiff a reasonable opportunity to observe the Jummah Service, a central tenet of the Islamic religion." According to plaintiff this amounted to purposeful discrimination since the defendant failed "to treat him similarly to those similarly situated..." He also accused the defendants of establishing "the Christian religion as

their religion of choice through official sanction and sponsorship among other things." Finally, he claimed that he was deprived of the opportunity to practice his religion absent an administrative hearing and this violated his due process rights.

In response to the amend order's directive to provide the number of Muslims incarcerated at LPDC, plaintiff asserted that he could not know this fact because "all inmates is (sic) separated from each other." In response to the order's directive to state whether he was deprived of the opportunity to practice private prayer he indicated that he entitled to "a service led by a lay inmate Imam (leader) as done in other Correctional Centers." He concluded by claiming that the denial of his right to practice his chosen religion resulted in mental anguish since "the prison has ample space to allow Muslims one hour to perform a sermon and prayer on Fridays..."

### *Misplaced Mail/Access to Courts*

2. The defendants (specifically Cecil Smith and R. Johnson) misappropriated legal mail then denied that he was negligent in so doing. Plaintiff's grievance on this issue was ignored by the Warden until May 23, 2015, when plaintiff received a hand delivered response from the Sheriff which plaintiff refused to sign because he was dissatisfied with the response.

Plaintiff claimed that the misappropriation of legal mail prejudiced him as follows, "Plaintiff was ordered to re-file his complaint on the original form (See Civil Action 3:15-0263 at Doc. 1). Plaintiff was unable to get copies because the Dy. R. Johnson misappropriated the complaint and the court strickin (sic) the complaint. Plaintiff filed a

Motion [doc. #7] after [doc. #3]. On April 29, 2015,the Court struck Plaintiff's [complaint] because he failed to comply with the February 12 order [doc. #7] Upon consideration it was ordered that Petitioner's motion [doc. #7] was granted and the order to strike plaintiff's complaint was rescinded. On June 16, 2015, plaintiff filed a motion seeking permission to 're-file' his complaint in the Parish of East Baton Rouge [Doc. 13]." According to plaintiff the alleged "misappropriation of legal indigent mail affected an actual, or potential present, past or future concealment of information that could rectify abusive treatment of the legislature's intent of 15:571.3 which was a violation of ... due process and created liberty interest that also caused mental anguish."

### *Medical Care*

3. The defendants (specifically Anna Rawson) denied plaintiff medical care upon his transfer to LPDC from the Bienville Parish Jail on January 9, 2015. According to plaintiff, he fell on January 9, 2015, and injured his back and neck and suffered head aches. His requests for medical assistance were ignored by Nurse Rawson. Plaintiff maintains that he advised Rawson of his medical complaints – jerking motions, severe pains running down his back to his legs – and she indicated that she would obtain plaintiff's medical records. She thereafter failed to respond to plaintiff or make any arrangements for him to be examined by a physician and instead he was transferred to JPCC.

### *Negligence*

4. In April 2015 plaintiff sustained an injury when he fell from the prison transport van. On April 7 he filed a grievance concerning the incident. Plaintiff claims that he was seated in the front seat of the van without a seatbelt. As the van leaned to the right in a curve, plaintiff was forced against the passenger side door and when Officer Smith opened the door plaintiff lost his balance and fell. He claims this injury was due to the negligence of Officer Smith. Plaintiff was examined and treated at a nearby hospital.

### *Retaliation*

5. Upon plaintiff's return to LPDC after the April 7 incident, he was placed in an isolation cell where he was "the object of ridicule resulting in mental anguish." Plaintiff claims his placement was an act of punishment by Nurse Rawson and his transfer was an act of retaliation for having filed grievances.

### *Law and Analysis*

*1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (*per curiam*). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## 2. Practice of Religion

First and foremost plaintiff complains that the defendants have interfered with his right to freely practice his chosen religion as guaranteed by the First Amendment and federal statute. Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. Nevertheless, lawful incarceration, by its very nature, brings about the necessary withdrawal or limitation of many privileges and rights. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

The standard for evaluating an inmate's claim that a prison regulation or practice improperly restricts his right to the free exercise of his religion requires the court to evaluate the regulation or practice in order to determine whether it "is reasonably related to legitimate penological interests." *Id.* at 349. The "reasonableness" of a regulation or practice is evaluated based upon the following inquiry: (1) Is there a valid, rational connection between the prison practice and the legitimate governmental interest put forward by prison officials to justify the

practice;  (2) Are there alternative means of exercising the right that remain open to prison inmates, that is, are inmates allowed other means to express their religious beliefs on a general level;  (3) What impact will accommodation of the asserted constitutional right have on guards and other inmates and on the allocation of prison resources generally; and, (4) Are alternatives to the prison practice available that would accommodate the inmates' rights at a *de minimis* cost to valid penological interests. *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), *Green v. Polunsky*, 229 F.3d 486, 489-90 (5th Cir.2000). Each factor need not be considered, and the factors need not be evaluated evenly. *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 80 (5th Cir.1992).

It must be noted, that with regard to the first prong of the *Turner* test, plaintiff has never alleged that the defendant prison officials have prohibited him from practicing his religion. Plaintiff's right to study the Quran, his right to engage in solitary prayer or meditation, or his choice of diet was in no way hampered or impeded. Indeed, plaintiff complains only that he was unable to attend a weekly congregational service led by an Imam. However, plaintiff has at no time alleged (other than in a conclusory fashion) that there were other Muslims incarcerated at the facility with whom he could have joined for congregational prayer. Nor has he identified an Imam among the prison population or otherwise available who could have led the prayers and preached a sermon. In other words, to the extent that plaintiff now asserts a First Amendment claim, such claim should be dismissed as frivolous.

It may also be assumed that plaintiff intended to allege a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA)  [see 42 U.S.C. §2000cc *et seq*.].  RLUIPA mandates that, "[n]o government shall impose a substantial burden on the religious exercise of a

person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc-1(a).

The Supreme Court has noted that RLUIPA protects the rights of prisoners who are unable to freely attend to their religious observances and who are dependant on the government's permission and accommodation. *Cutter v. Wilkinson*, 544 U.S. 709, 721, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005).

In order to state a claim under RLUIPA, the prisoner must show that challenged government action places a <u>substantial burden</u> on the exercise of his religion. Under RLUIPA, a "religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id. §* 2000cc-5(7)(A). Thus, religious services, religious education, and dietary principles all qualify as "religious exercises."

While the statute does not define "substantial burden," Fifth Circuit jurisprudence has defined it as follows in the context of the RLUIPA, "... a government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004) at 569-70.

The facts as alleged by plaintiff fail to establish that any burden, much less a substantial burden, was ever imposed on plaintiff. As noted above, private devotions and scripture study was neither prohibited nor curtailed.

Plaintiff also implied that the defendants have violated plaintiff's right to equal protection. "To succeed in his equal protection claim [plaintiff] must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir.1992) (citing *McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987)). Here, plaintiff's claim must fail because he cannot demonstrate discriminatory effect. As noted above, he has not identified a significant congregation of Muslims incarcerated at the LPDC; presumably Christians make up a much larger demographic in Lincoln Parish and in its prison. That Christians are allowed congregational worship does not per se establish an equal protection violation. Plaintiff's claim is frivolous.

### 3. Misplaced Mail/Access to Courts

Plaintiff also complained that a legal document prepared for this Court was either accidentally or purposefully lost by the defendants. By way of these allegations, plaintiff implies that he was denied his constitutionally protected right of access to the courts. "It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999). *See Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to

encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d at 821; *Lewis v. Casey*, 518 U.S. at 351, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996). Here, plaintiff claims are clearly refuted by the record and his prior litigation history.

Nevertheless, in order for him to state a claim that he was denied his constitutional right of access to the courts, even if he can show some interference, he must also "demonstrate[ ] that his position as a litigant was prejudiced by his denial of access to the court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (*per curiam*) (citing *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993)). This requirement that a claimant show "actual injury" is "not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354.

Plaintiff claims that the actions of the defendant interfered with his right of access to this Court with regard to his prior complaint in *James Coleman v. James M. LeBlanc, et al.*, Civil Action No. 3:15-cv-0263. Plaintiff filed that complaint in this Court on February 6, 2015. He sued James M. LeBlanc, the Secretary of Louisiana's Department of Corrections, Sheryl Ranatza, Chairman of the Louisiana Parole Board, and Orlando Beene, plaintiff's parole officer, claiming breach of contract with regard to the computation of "good time" credits and requesting a re-computation of "good time" credits, his release from parole, and payment of incentive wages as per the contract. See Civil Action 3:15-0263 at Doc. 1. Plaintiff was ordered to submit his complaint on the form provided to prisoners in this District, but he failed to timely comply with that order, presumably because of the lost or misappropriated document. Accordingly, on April 29, 2015, his complaint was ordered stricken. [Doc. 6] However, when plaintiff discovered the error he applied for reconsideration on May 5, 2015 [Doc. 7], and his motion was granted and his

13

case reinstated on May 11, 2015. [Doc. 8] Thereafter, as noted above, on June 16, 2015, he filed a motion seeking permission to "re-file" his complaint "in the Parish of East Baton Rouge." [Doc. 13] On July 6, 2015, the complaint was stricken and dismissed for failing to comply with the amend order that issued after reinstatement. However, in so doing, the undersigned concluded that plaintiff's motion [Doc. 13] should be construed as a motion for voluntary dismissal so as to allow plaintiff the opportunity to re-file his complaint in the forum of his choice. [Doc. 14] In other words, given the facts of the case, plaintiff suffered no prejudice as a result of the complained of actions of the defendants and therefore his access to courts claim must be dismissed as frivolous.

*4. Medical Care*

Plaintiff faults Nurse Rawson for failing to attend to his pre-existing medical problems upon his transfer to LPDC from the Bienville Parish Jail in January 2015. Plaintiff is an inmate in the custody of the LDOC. The constitutional right of a convicted prisoner to appropriate medical care is based upon the Eighth Amendment's prohibition of cruel and unusual punishment. In order to establish an actionable violation of the Eighth Amendment, the prisoner plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the inmate to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted).

Plaintiff disagrees with the conclusions and treatment options offered by Nurse Rawson, however, his disagreement with the health care professional's diagnosis or treatment choices falls far short of establishing deliberate indifference since mere disagreement with medical diagnosis or treatment does not state a claim under the Eighth Amendment. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997), citing *Young v. Gray*, 560 F.2d 201, 201 (5th Cir.1977); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir.1985).

In any event, in order to allege a violation of the Eighth Amendment plaintiff must not only demonstrate deliberate indifference on the part of the defendants, but he must also demonstrate that the deliberate indifference resulted in substantial harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). Plaintiff has not alleged that he suffered substantial harm resulting from the defendants' deliberate indifference and therefore he fails to state a claim for which relief may be granted.

*5. Negligence*

In April 2015 plaintiff sustained an undescribed injury when he fell from the prison transport van. Plaintiff claims that he was seated in the front seat of the van without a seatbelt. As the van leaned to the right in a curve, plaintiff was forced against the passenger side door and when Officer Smith opened the door plaintiff lost his balance and fell. Plaintiff was examined and treated at a nearby hospital. Nevertheless, he claims his injury was due to the negligence of Officer Smith.

As noted in *Daniels v. Williams*, 474 U.S. 327, 333, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986), [w]here a government official's act causing injury to life, liberty, or property is merely

negligent, "no procedure for compensation is *constitutionally* required." (Emphasis in original).

In other words, to the extent that plaintiff seeks damages pursuant to Section 1983 for acts which were, at worst, merely negligent, he fails to state a claim for which relief may be granted.

Nevertheless it appears that plaintiff also asks the Court to exercise its pendent jurisdiction in order to consider the claim. Under the doctrine of pendent jurisdiction, a federal court has the constitutional power to hear a state law claim if it is closely related to another federal claim. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). However, it is also clear that a district court has wide discretion to refuse to hear a pendent state law claim. See 28 U.S.C. § 1367(c)(3); *United States v. Capeletti Bros., Inc.*, 621 F.2d 1309, 1317–18 (5th Cir.1980). The "general rule" in the Fifth Circuit "is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial." *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir.1999) (citation omitted); *accord Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7 (1988) ( "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining state-law claims."). Should the Court adopt this recommendation to dismiss plaintiff's Section 1983 claims as frivolous or for failing to state a claim for which relief may be granted, dismissal of the pendent claims would be appropriate.

*6. Retaliation*

Upon plaintiff's return to LPDC after the April 7, 2015, incident, he was placed in

an isolation cell where he was "the object of ridicule resulting in mental anguish." He claims his placement was an act of punishment by Nurse Rawson and his subsequent transfer was an act of retaliation for having filed grievances.

"To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir.2006) (internal quotation marks and citation omitted). "The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995) (internal quotation marks and citation omitted). "Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris*, 449 F.3d at 686.

According to plaintiff, he was transferred to his present place of confinement because he exercised his right to file prison grievances; however, his conclusory allegation does not establish causation. Further, he offers no facts to suggest that the transfer to his present place of confinement amounted to an adverse act. *Compare Smith v. Hebert*, 533 Fed. Appx. 479 (5th Cir. 2013). Indeed, given the litany of complaints about conditions and circumstances experienced at JPDC, his subsequent transfer would seem beneficial and not an act of retribution.

Finally, plaintiff complains that he was made "an object of ridicule." Verbal threats or taunts without more, do not support a claimed constitutional violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.1983). His allegation that he was otherwise verbally abused does not state a claim of constitutional

17

dimension. Allegations of mere verbal abuse by prison guards simply do not give rise to a cause of action under § 1983. *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5 Cir.1993), *Siglar v. Hightower*, 112 F.3d 191 (5 Cir.1997.

Finally, 42 U.S.C. § 1997e was amended by the Prison Litigation and Reform Act (PLRA) of 1996. Under §1997e(e), prisoners are barred from recovering monetary damages for mental or emotional injuries "unless there is a prior showing of physical injury." *Crawford-el v. Britton*, 523 U.S. 574, 596, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). The "physical injury" required by § 1997e(e) must be more than *de minimis* but need not be significant. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) (citing *Siglar v. Hightower*, 112 F.3d 191 (5th Cir.1997). Plaintiff has alleged no physical injury resulting from the complained of verbal abuse, yet he seeks damages of $350,000. Plaintiff thus implies that he sustained mental or emotional injuries as a result of the defendants' actions. Plaintiff was clearly not physically injured by the threats, taunts, or profanity, and therefore §1997e(e) prohibits him from recovering monetary damages.

In short, plaintiff's claims are manifestly frivolous and dismissal on that basis is recommended.

*Recommendation*

Therefore, considering the foregoing,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaints be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted in accordance with the provisions of 28 U.S.C. §§ 1915 and 1915A.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved

by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).

In Chambers, Monroe, Louisiana, December 7, 2015.

_____
**KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE**